UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

REGAL WARE, INC.,

       Plaintiff,

      v.                                  Case No. 02-C-0289

ENRIQUE DIAZ, an individual d/b/a
CLASSICA DEL SOL INC., d/b/a
CARICO DEL SOL, and JOHN DOES #1-5,

       Defendants.
_____

## O R D E R

This matter comes before the court on plaintiff Regal Ware, Inc.'s ("Regal Ware") motion for default judgment and award of damages against defendants Enrique Diaz, Classica Del Sol, Inc., and Carico Del Sol. The court determines that further submissions are required to ascertain the appropriate amount of damages to award Regal Ware in connection with Regal Ware's motion. Therefore, Regal Ware should be prepared to support its claim for damages in accordance with the court's opinion below.

## BACKGROUND

Regal Ware is a Delaware corporation with its principle place of business in Kewaskum, Wisconsin. Regal Ware sells cookware identified by the trademark CLASSICA to distributors for resale to consumers. Between

Ware's CLASSICA cookware. (Plaintiff's September 7, 2005 proposed findings of fact ¶ 20.)[1] The distributor agreement provided that upon termination of the agreement the distributor will discontinue all use of the CLASSICA trademark. Around the time of the termination of the relationship between the plaintiff and Diaz, Diaz began to sell the cookware of a competitor, Carico cookware. Diaz began doing business as Classica Del Sol and as Carico Del Sol. Classica Del Sol, Inc. is an Arizona corporation under the direction and control of Diaz. Despite selling Carico cookware, the plaintiff alleges that Diaz continued to use the CLASSICA trademark in various forms, including using the trademark on his letterhead, displaying the trademark in a television commercial, and displaying the trademark on the storefront of his new business until June 2002. Regal Ware alleges that Diaz continued sales, offers for sale, and display of the CLASSICA trademark in connection with goods including non-electric metal cookware sets. Regal Ware alleges claims for false designation of origin and misleading descriptions and representations in violation of Section 43(a) of the Trademark Act of 1946, as amended, (the "Lanham Act"), 15 U.S.C. § 1125(a), and trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). In addition to damages available under the Lanham Act, the

---

[1] Plaintiff's September 7, 2005 proposed findings of fact and conclusions of law state that Diaz was no longer an independent contractor for Regal Ware as of December 31, 2001. (*Id.* ¶ 19.) Plaintiff's complaint states that the distributorship agreement between the plaintiff and Diaz "was terminated on or about November 2001." (Complaint ¶ 27.)

plaintiff also seeks damages in the amount of $18,572.88 for goods that Diaz ordered from the plaintiff during their business relationship but did not pay for.

By order dated June 14, 2005, the court set a final pre-trial conference for September 8, 2005. On August 26, 2005, the court received a letter from plaintiff's attorney who indicated that the plaintiff made numerous unsuccessful attempts to contact the defendants in preparation for the final pre-trial conference. The plaintiff moved for entry of default of all defendants on September 7, 2005. On September 8, 2005, Diaz failed to appear at the final pre-trial conference. By order dated September 13, 2005, the court ordered the clerk of court to enter default against all defendants and directed the plaintiff to submit a proposed order for entry of default judgment. On October 3, 2005, the plaintiff moved for default judgment.

## ANALYSIS

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). "Although upon default, the well-pleaded allegations of a complaint relating to liability are taken as true, allegations in a complaint relating to the amount of damages suffered ordinarily are not." *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989); *Dundee Cement Co.*, 722 F.2d at 1323. "A judgment by default may not be entered

without a hearing on damages unless . . . the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co.*, 722 F.2d at 1323.

In its Fifth Cause of Action, Regal Ware seeks $18,572.88 from Diaz d/b/a Classica Del Sol for goods that Diaz received and never paid for. Regal Ware has adequately supported its claim for $18,572.88. (*See* Amended Answer ¶¶ 54-63.)

Further submissions are necessary, however, with respect to Regal Ware's claimed damages under the Lanham Act.

The Lanham Act contains the following damages provisions:

(a) Profits; damages and costs; attorney fees

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The

-4-

court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).

(b) Treble damages for use of counterfeit mark

In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title or section 220506 of title 36 that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of title 26, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.

15 U.S.C. § 1117(b).

(c) Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

(1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

> (2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

The plaintiff seeks the following damages under the Lanham Act: (1) $60,000 that Diaz says that he made in three weeks with the plaintiff's competitor before Diaz terminated his relationship with Regal Ware; (2) $152,509.74 in estimated sales that Diaz made between December 2001 to June 2002; and (3) $49,499.37 in attorney fees. In addition to these amounts, the plaintiff argues that the first two categories of damages should be trebled.[2] Alternatively, Regal Ware invites the court to ignore the first two categories of damages and award $1,000,000 in statutory damages for a total dollar amount of $1,049,499.37. (*See* October 3, 2005 proposed order at 7-8, 10.) The court addresses each category of damages separately.

I.      $60,000 in stated sales

In a November 21, 2001 letter addressed to "friends and distributors," Diaz stated, "In my first three weeks with Carico I received almost $60,000 in profits." (Plaintiff's motion for entry of default, Ex. 2.) Regal Ware claims that

---

[2]In its proposed order, Regal Ware states that $212,787.11 should be trebled to $638,361.33. (*See* October 3, 2005 proposed order at 7.) Presumably, the plaintiff miscalculated the addition of the first two categories of damages (i.e. $60,000 + $152,509.74 = $212,509.74, not $212,787.11) The plaintiff, therefore, presumably seeks trebled damages in the amount of $637,529.22 (i.e. $212,509.74 multiplied by 3), not $638,361.33.

-6-

it is entitled to the $60,000 because the $60,000 is "contrary to the contractual agreement between the Plaintiff and the Defendant." (Plaintiff's proposed order for entry of default judgment at 5.) Regal Ware points out that "the Defendant should be held accountable to the Plaintiff for the $60,000 in stated sales while still under contract with the Plaintiff." (*Id.* at 6.) Regal Ware also notes that Diaz claims to have made the $60,000 "before terminating his agreement with the Plaintiff." (*Id.* at 8.) In its complaint, Regal Ware alleges that the "Distributorship Agreement" states that the "Distributor agrees not to sell any cookware competing with those products sold to distributor by Regal Ware." (Complaint ¶ 25.) Regal Ware's claim to the $60,000, therefore, appears to be based upon a theory of breach of contract, rather than upon any violation of the Lanham Act, but even this is not certain because Regal Ware does not support its claim with any legal citation, only its assertion that the "defendant should be held accountable."

In addition to insufficient legal support, the court notes other problems with Regal Ware's claim to the $60,000. First, in its complaint, Regal Ware never sets forth a breach of contract claim based upon Diaz's sale of a competitor's product *before* termination of the agreement. In its Fifth Cause of Action, Regal Ware alleges breach of contract based upon Diaz's failure to pay for goods that Diaz ordered from Regal Ware. In its Sixth Cause of Action,

Regal Ware alleges breach of contract based upon Diaz's continued sale of Regal Ware's products after the distributor agreement was terminated in November 2001. Regal Ware's complaint contains no other breach of contract claims, and neither the Fifth nor the Sixth Causes of Action allege a breach of the exclusivity provision of the distributorship agreement that allegedly occurred during the life of the agreement. Second, Diaz's statement that he received almost $60,000 in profit in his first three weeks with Regal Ware's competitor in a letter to friends and distributors is not an exact accounting of the profits that Diaz actually made. The phrase "almost $60,000" is vague in itself, and the court surmises that Diaz may have exaggerated the number based upon the context of his statement. For example, Diaz may have been attempting to reassure his friends and associates that he made the right career move. The court understands that Diaz's unwillingness to participate in the case may hinder Regal Ware's ability to make an exact accounting of its damages, or Diaz's profits, but Regal Ware has not articulated any of its efforts to ascertain its damages with more precision.

II. $152,509.74 in estimated sales that Diaz made between December 2001 to June 2002

In calculating the amount of money that the court should award it for the defendants' violations of the Lanham Act, Regal Ware makes no attempt to quantify the damages that it sustained as a result of the Lanham Act violations.

To recover damages under the Lanham Act, a trademark holder must show that the violation caused actual confusion among his customers and, as a result, he suffered actual injury. *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 639 (7th Cir. 2003); *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204-05 (7th Cir. 1990). Regal Ware makes no showing of actual confusion or actual injury. "Other avenues of relief, however, are not foreclosed. In the past, courts have fashioned wide-ranging relief for a violation of the Lanham Act, allowing remedies such as a recovery of defendant's profits, an award of costs of the action, and, in some exceptional cases, an award of attorney's fees." *Web Printing Controls*, 906 F.2d at 1205. The Lanham Act states that a plaintiff "shall be entitled . . . subject to the principles of equity" to recover a defendant's profits. 15 U.S.C. § 1117(a). The court is charged with the responsibility to "assess such profits and damages or cause the same to be assessed under its direction." *Id.* In assessing the defendants' profits, Regal Ware must prove the defendants' sales. *Id.* ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). After the plaintiff provides evidence of the defendant's profits, the court has discretion to modify the award to the plaintiff. *Id.* ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court

shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.").[3] "[T]he monetary relief granted by the district court must be great enough to further the statute's goal of discouraging trademark infringement but must not be so large as to constitute a penalty." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 745 (7th Cir. 1985). "[D]isgorgement is most appropriate if damages are otherwise nominal." *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1096 (7th Cir. 1994).

In this case, Regal Ware attempts to quantify the defendants' profits between December 2001 and June 2002, when Diaz removed advertising references from his place of work. Regal Ware, however, has not supported its request for damages with any evidence of Diaz's sales or profits. Instead, Regal Ware "estimates" Diaz's sales between December 2001 and June 2002 based upon his reported average monthly sales working with the plaintiff between January 2000 and October 2001 which amounted to $479,316.32, or $21,787.11 per month. Regal Ware states, "It would be reasonable to assume that the Plaintiff would have similar sales results in the months that the sale

---

[3]The court notes that Regal Ware omitted relevant portions of the Lanham Act's damage provisions, including the provision that allows a court to adjust the award of damages in its discretion. (*See* plaintiff's proposed order for entry of default at 4-5.)

-10-

results are not known." (Plaintiff's proposed order for entry of default judgment at 6.)

Regal Ware, however, does not explain why that assumption is reasonable. Diaz is selling a different product, perhaps to a different base of customers, and working with a different company. Maybe Diaz's sales during the first months of selling a new product are not as robust as his sales working with Regal Ware after almost eight years. Regal Ware does not explain why its assumption is reasonable or why the court should accept any "estimate" in light of the statute's instruction that the plaintiff shall "prove" the defendant's sales. Even if Regal Ware's estimate were an acceptable basis to measure Diaz's sales between December 2001 and June 2002, the statute allows the plaintiff to recover the defendant's profits, not the total amount of gross sales. Also, Regal Ware offers no justification for estimating Diaz's sales based upon his average monthly sales between January 2000 and October 2001. Why not compute Diaz's average monthly sales over the eight-year relationship that he had with Regal Ware? Why not compute Diaz's average monthly sales for the first seven months that he worked with Regal Ware? The basis for Regal Ware's estimate appears to be completely arbitrary. Just as important, Regal Ware's estimate appears to be an insufficient basis for calculating Diaz's profits under the Lanham Act.

Again, the court understands that Regal Ware is in a difficult position. The information that Regal Ware needs to calculate the defendant's profits is in the hands of a defendant who has chosen to no longer participate in this case. Perhaps Diaz has not kept proper records of his sales or perhaps he refused to provide the information during discovery. In any event, the plaintiff is charged with proving the defendant's sales, 15 U.S.C. § 1117(a), and Regal Ware has not articulated any of its efforts to ascertain Diaz's profits with more precision. Even if the defendant bears "the burden of uncertainty" in assessing damages and costs, *see Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972-73 (2d Cir. 1985), the plaintiff must do more than pick a number out of a hat.

III. $49,499.37 in attorney fees

The Lanham Act provides that attorney's fees may be awarded "in exceptional cases," as where the acts of infringement can be characterized as willful. 15 U.S.C. § 1117(a); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 942 (7th Cir. 1989).[4] Regal Ware asserts that Diaz's actions were "willful." (Plaintiff's proposed order for entry of default judgment at 6.) Regal Ware asserts that Diaz's actions were "intended to divert customers from Regal, trade on the goodwill of Regal, and palm off the competitor's goods as Regal's and vice versa."

---

[4]The court notes that Regal Ware omitted relevant portions of the Lanham Act's damage provisions, including the provision that allows a court to award attorney fees to the prevailing party in "exceptional cases." (*See* plaintiff's proposed order for entry of default at 4-5.)

(*Id.*) Regal Ware asserts that Diaz offered evasive statements during discovery and failed to respond to plaintiff's attempts to settle the dispute. (*Id.*)

Diaz's conduct during the course of discovery and the fact of his default do not show that his acts of infringement were willful. Moreover, Regal Ware only offers its view of Diaz's "intent" but does not highlight any facts in this case that make this an "exceptional" case where attorney fees are appropriate. Regal Ware offers no legal support in connection with its claim for attorney fees. (*See* plaintiff's proposed order for entry of default judgment at 6.) The court concludes that Regal Ware has not adequately supported its request for attorney fees.

IV. Treble damages

Regal Ware's request for treble damages consists of two sentences: "The Defendant should not be rewarded for his evasive actions, but should be held accountable as stated in the statute. Accordingly, damages in the amount of $212,787.11 should be trebled to $638,361.33."[5] (Plaintiff's proposed order for entry of default judgment at 7.) Rather than support its request for treble damages with a citation to the proper legal standard in 15 U.S.C. § 1117(b) or any other legal authority, Regal Ware suggests that Diaz "be held accountable"

---

[5] Footnote 3 of this order suggests why these figures may not be accurate.

-13-

for his "evasive actions" during discovery. Regal Ware has not adequately supported its request for treble damages.

V.      $1,000,000 in statutory damages

Like Regal Ware's request for attorney fees and treble damages, Regal Ware's request for statutory damages in the amount of $1,000,000 is not supported by the facts of this case. 15 U.S.C. § 1117(c) contains two ranges of statutory damages: (1) "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," and (2) "if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."[6]

As previously noted, Regal Ware has not shown that Diaz's infringement activities were willful. Where the plaintiff has not shown that the defendant's infringement was willful, the court may not award statutory damages in excess of $100,000. 15 U.S.C. § 1117(c). Regal Ware argues that "the Plaintiff cannot be sure what actual damages the Defendant has caused the Plaintiff," (Plaintiff's proposed order for entry of default judgment at 8), but any amount of

---

[6]The court notes that Regal Ware omitted relevant portions of the Lanham Act's damage provisions, including the first range of statutory damages in 15 U.S.C. § 1117(c) involving infringement activities that were not willful. (*See* plaintiff's proposed order for entry of default at 4-5.)

uncertainty does not automatically justify awarding the plaintiff the statutory maximum. Both 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(c) require that the court award monetary relief that the court deems just. Regal Ware's claim for $1,049,499.37 does not appear to be a just monetary award.

Accordingly,

IT IS ORDERED that Regal Ware support its claim for damages in accordance with this order by filing a documented offer of proof together with a memorandum of law in support thereof within thirty (30) days from the date of this order; in lieu of filing a brief, Regal Ware may indicate that it wishes the court to enter judgment in its favor in the amount of $18,572.88; if Regal Ware files a brief demonstrating that it is entitled to a judgment in excess of $18,572.88, the court may find it appropriate to schedule a hearing on Regal Ware's motion for default judgment.

Dated at Milwaukee, Wisconsin, this   25th   day of January, 2006.

BY THE COURT:

s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge