# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

REGAL WARE, INC.,

      Plaintiff,

v.                                                        Case No. 02-C-0289

ENRIQUE DIAZ, an individual d/b/a
CLASSICA DEL SOL, INC., d/b/a
CARICO DEL SOL, and JOHN DOES #1-5,

      Defendants.

# ORDER

Plaintiff Regal Ware, Inc. ("Regal Ware") filed a motion for entry of default judgment against defendants Enrique Diaz, Classica Del Sol, Inc., and Carico Del Sol on October 3, 2005. Along with its motion for entry of default judgment, Regal Ware submitted a proposed order directing the defendants to pay Regal Ware $1,000,000 in statutory damages pursuant to 15 U.S.C. § 1117(c) and $49,499.37 in attorneys' fees and costs. By order dated January 26, 2006, the court requested further briefing from Regal Ware to ascertain the appropriate amount of damages to award in connection with Regal Ware's motion for default judgment. On February 24, 2006, Regal Ware submitted a brief in support of its claim for damages and adjusted the total amount of damages to $280,581.99. For the reasons stated below, the court will grant Regal Ware's motion for entry of

default judgment and order the defendants to pay Regal Ware the requested $280,581.99.

BACKGROUND

Regal Ware is a Delaware corporation with its principle place of business in Kewaskum, Wisconsin. Regal Ware sells cookware identified by the trademark CLASSICA to distributors for resale to consumers. Between November 30, 1993, and November 15, 2001, Diaz was a distributor of Regal Ware's CLASSICA cookware. (Pl.'s September 7, 2005, Proposed Findings of Fact, ¶ 20.) The distributor agreement provided that upon termination of the agreement the distributor will discontinue all use of the CLASSICA trademark. Around the time Diaz terminated his distributor agreement with Regal Ware, Diaz began to sell the cookware of one of Regal Ware's competitors, Carico.

The plaintiff alleges that Diaz continued to use the CLASSICA trademark in various forms while selling Carico cookware, including using the CLASSICA trademark on his letterhead, displaying the CLASSICA trademark in a promotional television program, and displaying the CLASSICA trademark on his storefront until June 2002. Regal Ware alleges that Diaz continued sales, offers for sale, and display of the CLASSICA trademark in connection with goods including non-electric metal cookware sets. Regal Ware alleges claims for false designation of origin and misleading descriptions and representations in violation

of Section 43(a) of the Trademark Act of 1946, as amended, (the "Lanham Act"), 15 U.S.C. § 1125(a), and trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). In addition to damages available under the Lanham Act, the plaintiff also seeks damages in the amount of $18,572.88 for goods that Diaz ordered from the plaintiff during their business relationship but did not pay for.

By order dated June 14, 2005, the court set a final pretrial conference for September 8, 2005. On August 26, 2005, the court received a letter from plaintiff's attorney who indicated that the plaintiff made numerous unsuccessful attempts to contact the defendants in preparation for the final pretrial conference. The plaintiff moved for entry of default of all defendants on September 7, 2005. On September 8, 2005, Diaz failed to appear at the final pretrial conference. By order dated September 13, 2005, the court ordered the clerk of court to enter default judgment against all defendants and directed the plaintiff to submit a proposed order for entry of default judgment. On October 3, 2005, the plaintiff moved for default judgment and submitted the proposed order awarding the plaintiff $1,049,499.37. In response to the January 26, 2006, court order requesting the plaintiff to support its claim for damages, the plaintiff filed a supporting brief on February 24, 2006, and adjusted the total amount of damages to $280,581.99.

## ANALYSIS

To justify the damages sought under § 43(a) of the Lanham Act, Regal Ware demonstrated that the defendants' use of the plaintiff's trademark was likely to create customer confusion concerning the origin of the goods or services. 15 U.S.C. § 1125(a). Courts have held that there is a great likelihood of confusion when an infringer uses the exact trademark as the plaintiff. *See S&R Corp. v. Jiffy Lube Int'l Inc.*, 968 F.2d 371, 375-76 (3d Cir. 1992); *See also Dunkin' Donuts, Inc. v. Donuts, Inc.*, 2000 U.S. Dist. LEXIS 17927, 2000 WL 1808517 at *5 (N.D. Ill. 2000) (holding that "[w]here a franchisee materially defaults under a franchise agreement and that agreement is validly terminated – yet the franchisee continues to use the marks and trade name without the franchisor's consent – such continued use is unlawful under the Lanham Act.")

In the present case, the defendants used Regal Ware's trademark to sell goods in competition with Regal Ware after the defendants terminated their distributor agreement with Regal Ware. Regal Ware submitted evidence demonstrating the defendants' unauthorized use of Regal Ware's trademark, CLASSICA, when Diaz sold a competitor's products while labeling himself as a CLASSICA representative in a promotional television program and when Diaz used Classica Del Sol letterhead and displayed the CLASSICA trademark on his storefront until June 2002. Specifically, Regal Ware established that Diaz

- 4 -
Case 2:02-cv-00289-JPS   Filed 03/20/06   Page 4 of 12   Document 45

violated their trademark rights during a promotional television program that aired on December 1, 2001, and December 8, 2001. (Pl.'s Br. in Supp. of Claim for Damages, Ex. A.) In the program, Diaz is shown using the CLASSICA trademark and labeling himself as a CLASSICA representative while selling the competitor's goods which are also non-electric metal cookware sets. Additionally, Regal Ware submitted a letter from Diaz dated November 21, 2005, using Classica Del Sol letterhead and a photograph of the front of defendants' store with the CLASSICA trademark displayed on the awning. (Pl.'s Mot. for Entry of Default J., Exs. 2, 5.)

In accordance with the conclusions made by other courts presented with similar facts, the court concludes that the defendants' concurrent use of the same trademark to sell similar goods is highly likely to cause customer confusion about the defendants' affiliation with Regal Ware and violates 15 U.S.C. § 1125(a). In light of the evidence presented by Regal Ware, the court also concludes that Regal Ware has established that the defendants violated Regal Ware's trademark rights through the unauthorized use of their mark in the process of marketing a competitor's products and that the defendants created a likelihood of customer confusion concerning the origin of the goods. As such, Regal Ware is entitled to the remedies provided under the Lanham Act, 15 U.S.C. § 1117(a).

Pursuant to 15 U.S.C. § 1117(a), when a violation of the rights of the trademark owner has been established, the trademark owner is entitled to

defendants' profits, any damages sustained by the owner, and the costs of the action. *Id.* Regal Ware seeks to recover the following damages under 15 U.S.C. § 1117(a): (1) $60,000 that Diaz says that he made in three weeks with the plaintiff's competitor before Diaz terminated his relationship with Regal Ware; (2) $152,509.74 in estimated sales that Diaz made between December 2001 to June 2002; and (3) $49,499.37 in attorney fees under 15 U.S.C. § 1117(a). Additionally, Regal Ware seeks $18,572.88 from Diaz d/b/a Classica Del Sol for goods that Diaz received and never paid for.

In assessing the defendants' profits, Regal Ware is required to prove the defendants' sales only. *See* 15 U.S.C. § 1117(a). The defendants are charged with proving elements of cost or deductions. *Id.* In this case, Regal Ware bases its estimates of the defendants' sales between November 2001 and June 2002, the date when Diaz removed advertising references from his place of work, on the only evidence available to them. Regal Ware bases its estimates on a letter that Diaz wrote which states that he made $60,000 in profits in early November 2001 by selling the competitor's products, and on Diaz's average monthly sales figures from January 2000 to October 2001, the most recent time period for which Regal Ware had data.

On November 15, 2001, Diaz terminated his agreement with Regal Ware. (Pl.'s Mot. for Entry of Default J., Ex. 1.) In a November 21, 2001, letter, Diaz

- 6 -

indicated that he had been selling the competing Carico products and stated, "[i]n my first three weeks with Carico I received almost $60,000 in profits." (Pl.'s Mot. for Entry of Default J., Ex. 2.) This letter forms part of the basis for Regal Ware's estimate of the defendants' sales. To estimate the defendants' sales between December 2001 and June 2002, Regal Ware used Diaz's reported average monthly sales working with Regal Ware between January 2000 and October 2001 which amounted to $479,316.32, or $21,787.11 per month. Based on this figure, and the fact that the competing products that Diaz sold were similar to the plaintiff's products and that Diaz presumably employed similar marketing methods, Regal Ware estimates that the defendants' sales between December 2001 and June 2002 amounted to $152,509.74.

The court acknowledges that the estimates of $60,000 in defendants' November 2001 profits and $152,509.74 in defendants' sales from December 2001 to June 2002 are inexact, but given that the defendants refused to participate in litigating this case and failed to produce more accurate records, the court is obliged to accept the plaintiff's reasonable estimates based on the only evidence available to them. *See Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) (holding that where the defendants fail to produce evidence to refute plaintiffs' evidence of defendants' sales of counterfeit products,

the court must rely on less certain methods of proof (citing *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191, 193 (2d Cir. 1959))).

The U.S. Supreme Court has recognized that when, as here, the defendant controls the most satisfactory evidence of sales, the plaintiff need only establish a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). Other courts have concluded that if the defendant controls the most satisfactory evidence of sales and refuses to make such evidence available to the plaintiff or fails to keep adequate records, the plaintiff need only establish a basis for a reasoned conclusion concerning the amount of sales. *Louis Vuitton S.A.*, 765 F.2d at 973; *see also Deering, Milliken & Co., Inc.* 269 F.2d at 193 (holding that defendant's "failure and refusal to produce the most satisfactory evidence of sales– or absence of sales– leave his cause exposed to indirect and less definite and certain methods of proof"); *Gotham Silk Hosiery Co. v. Artcraft Silk Hosiery Mills*, 147 F.2d 209, 215 (3d Cir. 1944) (holding that the burden of proving losses shall rest upon the wrongdoer, who has so confused his own with that of another that neither can be distinguished.) Moreover, "if the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate recordkeeping or failure to produce documentary

evidence." *Q Sales & Leasing, LLC v. Quilt Prot., Inc.*, 2004 U.S. Dist. LEXIS 21610, 2004 WL 2420640 at *2 (N.D. Ill. 2004) (quoting *Aris Isotoner Inc. v. Dong Jin Trading Co. Inc.*, 1989 U.S. Dist. LEXIS 18447, 1989 WL 236526 at *5 (S.D.N.Y. 1989)).

The language of the Lanham Act supports the presumption that the defendants have the burden of proving errors or deductions in the plaintiff's estimates of the defendants' sales. "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). By failing to participate in the filing of the final pretrial report, failing to secure counsel, and otherwise failing to participate in the defense of the case, the defendants were found to be in default and the plaintiff was forced to estimate its damages without the accuracy or documentary evidence that the defendants could have provided. In accordance with the conclusions of other courts presented with similar facts, the court concludes that the plaintiff is entitled to recover the amount of damages the plaintiff proposes, based on its reasonable estimates of the defendants' sales of a competing product for the period of time in which the defendant unlawfully used the plaintiff's trademark. Specifically, the plaintiff is entitled to the $60,000 in profits that Diaz claims to have made in his first three weeks selling Carico products and the $152,509.74 that Regal Ware estimates that Diaz made in sales

of Carico products from December 2001 to June 2002 for a total of $231,082.62 pursuant to 15 U.S.C. § 1117(a).

Additionally, Regal Ware requests $49,499.37 in attorneys' fees. 15 U.S.C. § 1117(a) provides that attorneys' fees may be awarded "in exceptional cases," as where the acts of infringement can be characterized as willful. 15 U.S.C. § 1117(a); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 942 (7th Cir. 1989). Exceptional cases also include cases in which the acts of infringement are malicious, deliberate, fraudulent, or willful. *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994).

The evidence submitted by Regal Ware demonstrates that the defendants' actions were deliberate and willful. The defendants knowingly used the plaintiff's trademark without authorization in the marketing of a competitor's product. The defendants' deliberate and willful actions were evident when it used Regal Ware's CLASSICA trademark in its promotional television program, on its letterhead, and on its storefront. In a letter dated December 7, 2001, the plaintiff notified Diaz that his continued use of their registered trademark constituted an infringement of their trademark ownership rights and requested that Diaz cease the infringing activity and return all trademarked materials to the plaintiff. (Pl.'s Mot. for Entry of Default J., Ex. 5.) Despite this notice, Diaz continued to display the plaintiff's trademark on his storefront awning until at least June of 2002. (Pl.'s Mot. for

Entry of Default J., Ex. 5.) In light of the foregoing, the court concludes that the defendants' infringing actions were deliberate and willful and that Regal Ware adequately supports its request for $49,499.37 in attorney fees.

Finally, in the order dated January 25, 2006, the court concluded that Regal Ware adequately supported its claim for $18,572.88 for goods that Diaz ordered from Regal Ware during their business relationship but did not pay for. (*See* Am. Answer, ¶¶ 54-63.)

Accordingly,

IT IS ORDERED that Regal Ware's motion for entry of default judgment pursuant to Fed. R. Civ. P. 55(b) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that compensatory damages be and the same are hereby AWARDED in the amount of $212,509.74 pursuant to 15 U.S.C. § 1117(a) and $18,572.88 for goods that Diaz ordered but did not pay for, and reasonable attorneys' fees and costs be and the same are hereby AWARDED in the amount of $49,499.37 pursuant to 15 U.S.C. § 1117(a), for a total of $280,581.99. Interest on the judgment shall accrue from the date of entry of this order in accordance with 28 U.S.C. § 1961;

IT IS FURTHER ORDERED that the defendant be and the same is hereby ENJOINED and RESTRAINED, pursuant to the laws of the State of Wisconsin and the trademark laws of the United States of America, and the Federal Rules of

Civil Procedure, from: (1) using on or in connection with the production, manufacture, advertisement, promotion, displaying for sale, offering for sale, sale, or distribution of any article of merchandise, or for any purposes whatsoever, the Regal trademarks, including the CLASSICA mark or any colorable imitations thereof; (2) using in a context indicative of CLASSICA, on or in connection with the production, manufacture, advertisements, promotion, displaying for sale, offering for sale, sale or distribution of any articles of merchandise, any combination of identifying designations of Regal including but not limited to CLASSICA, or any colorable imitations of any of the above; and (3) representing by any means whatsoever, directly or indirectly, or doing any other acts of things calculated or likely to cause confusion, mistake or to deceive purchasers into believing that the defendants' products originated with or are the products of the plaintiff's or that there is any affiliation or connection between the plaintiff and the defendants or their products and from otherwise unfairly competing with the plaintiff.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2006.

BY THE COURT:

s/J.P. Stadtmueller
J.P. STADTMUELLER
U.S. District Judge